UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

D.M.D. MARK J. FELDMAN,

                      Plaintiff,

    -against-                                    1:10-CV-0261 (LEK/RFT)

D.D.S. ROBERT R. EDWAB,

                      Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Presently before the Court are a Motion to remand to state court (Dkt. No. 4) filed on behalf of Mark J. Feldman ("Plaintiff") and a Motion to dismiss for failure to state a claim upon which relief may be granted (Dkt. No. 3) filed on behalf of Robert R. Edwab ("Defendant").  For the reasons that follow, Plaintiff's Motion is denied and Defendant's Motion is granted.

**II.    BACKGROUND**

On February 3, 2010, Mark J. Feldman, D.M.D., initiated this defamation action against Robert R. Edwab, D.D.S. by filing a Complaint (Dkt. No. 1-2, Ex. A.) in the State of New York Supreme Court.  Compl. ¶¶ 20, 40-48.  Plaintiff seeks relief in the form of punitive and compensatory damages.  Compl at 10.  On March 5, 2010, pursuant to 28 U.S.C. § 1332(a), Defendant removed the action to the Northern District of New York, asserting diversity of citizenship and an amount in controversy exceeding $75,000.  See Notice of Removal (Dkt. No. 1) ¶¶ 6-8.  On March 12, 2010, Defendant filed a Motion to dismiss for failure to state a claim upon which relief can be granted.  See Dkt. No. 3.  Plaintiff opposes this Motion and has filed his own

Motion to remand this action to state court for lack of federal jurisdiction.  See Dkt. No. 8; Dkt. No. 4.

The action centers on two letters Defendant allegedly submitted to the New York State Dental Association's Search Committee ("Search Committee") concerning Plaintiff's qualifications for employment as the Executive Director of the New York State Dental Association ("NYSDA").  Compl. ¶¶ 12-14, 20, 31.  NYSDA is a constituent of the American Dental Association ("ADA") representing over 13,000 of New York's dentists.  Id. ¶ 9.  In 2008, the former Executive Director of NYSDA, Roy Lasky, was terminated from his position, and in January 2009, Plaintiff was given the position of Interim Executive Director of NYSDA.  Compl. ¶ 10.  Plaintiff had formerly held a position as President of NYSDA and as President and Executive Director of the ADA.  Id. ¶ 7-8.  In February 2009, Plaintiff was one of ninety applicants who applied for the permanent position as NYSDA's Executive Director; since October 2009 he has been serving as its current Executive Director.  Id. ¶¶ 2, 6, 12.

Defendant is the Executive Director of the Greater New York Dental Meeting.  Compl. ¶ 16.  He has never been employed by the ADA or NYSDA, nor has he ever worked with Plaintiff at any organization.  Id. ¶ 36.  On April 14, 2009, Defendant allegedly authored and sent to the Search Committee an "unsigned, 'anonymous' letter", see Compl., Ex. A. (Dkt. No. 1-2) ("April Letter"), from a fax machine owned and used by Defendant.  Id. ¶¶ 13-14.  The April Letter articulates "reasons why [NYSDA] should reject [Plaintiff's] application" for the Executive Director position.  Plaintiff alleges Defendant sent the April Letter to the Search Committee with the intention to cause Plaintiff financial harm, disqualify Plaintiff from employment consideration, and damage Plaintiff's reputation in the dental community.  Compl. ¶¶ 20, 23.  Plaintiff claims that two statements within

2

the April Letter are defamatory and "unequivocally false." Id. ¶¶ 21, 22. These allege that Plaintiff "was removed" and "dismissed" from his position as the ADA's Executive Director "after 5 months." April Letter; Compl. ¶ 21.

On May 29, 2009, Defendant allegedly faxed a second, lengthier, "unsigned, 'anonymous'" letter, see Compl., Ex. B (Dkt. No. 1-2) (the "May Letter"), from the same machine to the Search Committee as well as to NYSDA's Officers and Governors. Compl. ¶¶ 26-27. Plaintiff alleges that this letter also included "several defamatory statements" that Defendant "knew were false or were made with disregard for their truth." Id. ¶ 31. He asserts Defendant made these statements with the intent to "disgrace," "ridicule," and "discredit" Plaintiff in his trade, occupation and business. Id. ¶¶ 31, 41, 46. Plaintiff asserts the following seven statements from the May Letter are defamatory:

- Plaintiff "lied to . . . . everyone . . . at NYSDA";
- Plaintiff "was relieved" of his position at the ADA;
- Plaintiff's staff "has no supervision or direction";
- Plaintiff is an executive director with a "three day in house and two day shopping, playing golf and spend[ing] time with his family" schedule;
- Plaintiff does not have experience in association management or employee relations, and "he works 2 days a week";
- NYSDA needs an "honest" director who is "not concerned with past politics"; and
- Plaintiff "has ties to all" of the skeletons in NYSDA closets.

Compl. ¶¶ 32 (a-g).

Plaintiff alleges Defendant's false allegations in the two letters

were made with ill will in an attempt to prevent Plaintiff from being named Executive Director of NYSDA, to mar his reputation and to punish him for his association with a former NYSDA Executive Director Roy Lasky, who Defendant also harbored ill will against, and to punish Plaintiff for questioning the decision by Defendant to exclude his participation from the November, 2007 Greater New York Dental Meeting and Plaintiff's alleged refusal to mediate a conflict between the New York County Dental Society and NYSDA.

3

Compl. ¶35. The Complaint alleges that, as a result of Defendant's letters, Plaintiff has sustained damages and will continue to sustain damages. Id. ¶ 47.

### III.  MOTION TO REMAND TO STATE COURT

Plaintiff, a resident of Albany County and citizen of the State of New York, commenced this action on or around February 3, 2010, by filing his Complaint in the State of New York Supreme Court, County of Albany. Dkt. No. 1-2. Therein, Plaintiff alleges a single cause of action, libel per se, and requests compensatory and punitive damages. Id. On March 5, 2010, Defendant, a citizen of the State of New Jersey, removed the action to this District. See Notice of Removal (Dkt. No. 1) ¶¶ 1-5. Defendant asserts that this Court has jurisdiction based upon diversity of citizenship between the parties and a sufficient amount in controversy. Id. ¶¶ 6-9.

The federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). In the case at bar, there is no dispute that the parties' fulfill the diversity of citizenship requirement. Whether the amount in controversy requirement is met is less clear, as Plaintiff does not allege any specific amount of damages. He merely claims that damage suffered as a result of Defendant's allegedly defamatory statements entitle him to punitive and compensatory damages "in amounts to be determined upon trial of this action . . . ." Compl. at 10.

Defendant acknowledges that Plaintiff "does not enumerate the specific amount of damages alleged in the Complaint," but asserts there being "a 'reasonable probability' that Plaintiff's claimed damages in this action exceed the jurisdictional threshold of $75,000.00." Notice of Removal ¶ 6. Defendant supports this assertion by reference to a correspondence, signed by Plaintiff's counsel

4

and sent to Defendant prior to the commencement of this action, wherein Plaintiff presents a settlement demand of $150,000.00 and attaches a draft summons and complaint that states an amount in controversy in excess of $75,000.00.[1]  See Dkt. No 1, Exs. C-D; see also Def.'s Resp. Mot. to Remand (Dkt. No. 11) ("Def.'s Resp.") ¶ 3.  Plaintiff, however, contends that the amount in controversy requirement for federal jurisdiction is not satisfied and argues that this Court should remand the action to state court.  See generally Mem. in Supp. Pl.'s Mot. to Remand (Dkt. No. 4-3) ("Pl.'s Remand MOL").

A party asserting diversity jurisdiction "has the burden of proving that it appears to a "reasonable probability' that the claim is in excess of the statutory jurisdictional amount." Tongkook Am., Inc. v. Shipton Sportswear Co., 14 F.3d 781, 784 (2d Cir. 1994) (quoting Moore v. Betit, 511 F.2d 1004, 1006 (2d Cir. 1975)).  "Where . . . jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with 'competent proof' and 'justify [its] allegations by a preponderance of the evidence.'" United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc., 30 F.3d 298, 305 (2d Cir. 1994) (quoting McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936)).  Where federal jurisdiction is challenged and a plaintiff's pleadings are inconclusive as to the amount in controversy, a court may look beyond those pleadings to other evidence in the record.  Id.  In fact, the federal removal statute, codified at 28 U.S.C. § 1446, states that "a notice of removal may be filed . . . through service or otherwise, of a copy of an amended pleading, motion or *other paper* from which it may first be ascertained that the case is one which is or has become removable . . . . "  28 U.S.C. § 1446(b) (emphasis added).

---

[1] The draft complaint lists the Northern District of New York as the intended venue.  Dkt. No. 1, Ex. D.  That complaint was never filed.

As noted, Plaintiff's Complaint does not conclusively establish the amount in controversy. Therefore, the Court may look to other evidence in the record to determine whether it has jurisdiction over this action. United Food & Commercial Workers Union, 30 F.3d at 305. Defendant offers Plaintiff's December 11, 2009 settlement demand and draft summons and complaint as "other paper" evincing the satisfaction of the amount in controversy requirement. Notice of Removal ¶¶ 7-9; Def.'s Resp. ¶ 3.

The Second Circuit has not addressed the specific issue of whether a settlement demand constitutes an "other paper" within the meaning of the statute. However, other circuits, as well as district courts in this circuit, have held that § 1446(b) "is not limited to papers filed in the litigation and that the reference to 'other paper' in the statute can include pre-removal correspondence between the parties, including, as here, settlement offers." Vermande v. Hyundai Motor Am., Inc., 352 F. Supp. 2d 195, 200-01 (D.Conn. 2004) (collecting cases); Armstrong v. ADT Sec. Servs., Inc., No. 06 Civ. 4925, 2007 WL 187693, at *2 (S.D.N.Y. Jan. 23, 2007); Allen v. Ruby Tuesday, Inc., No. 3:06cv149, 2006 WL 2790431, at *3 (D. Conn. Sept. 26, 2006) (citation omitted). The Vermande court cautioned, however, that a settlement demand is only one factor in evaluating the amount in controversy and should be considered within the context in which it was made. 352 F. Supp. 2d at 202; see also Branford Paint Ctr., Inc. v. PPG Architectural Finishes, Inc., No. 3:06cv907, 2007 WL 329115, at *2 (D.Conn. Feb. 1, 2007) (permitting plaintiff that was arguing against removal but which had previously made settlement demands in excess of $75,000, to file a notice of limitation of damages to establish an amount in controversy below that which is required for federal jurisdiction); NSI Int'l, Inc. v. Mustafa, No. 09-CV-1536, 2009 WL 2601299, at *9 n.2 (E.D.N.Y. Aug. 20, 2009) (remaining noncommital on the issue of whether settlement demands

constitute "other paper" for purposes of § 1446(b), and determining that federal jurisdiction was adequately established by other evidence).  Other courts reject the use of settlement demands as evidence of the value of a party's claims, finding that such demands are inadmissible when offered for that purpose.  See Kamat v. Kurtha, No. 05 CV 10618, 2007 WL 188738, at *2 n.3 (S.D.N.Y. Jan. 22, 2007) (citing FED. R. EVID. 408(a)).

Much of the dispute as to whether settlement demands may be used to establish jurisdictional facts, centers on such demands' admissibility.  Id.  That concern is not present here. Federal Rule of Evidence 408 governs the admissibility of settlement offers.  It provides,

> (a) [e]vidence of the following is not admissible on behalf of any party, when offered to prove . . . amount *of a claim that was disputed* as to . . . amount . . .:
> (1) furnishing or offering or promising to furnish or accepting or offering or promising to accept a valuable consideration in compromising or attempting to *compromise the claim*; and
> (2) conduct or statements made in *compromise negotiations regarding the claim* . . . .

FED. R. EVID. 408(a) (emphasis added).  The Rule protects against admitting irrelevant evidence, as statements made during settlement negotiations "may be motivated by a desire for peace rather than from any concession of weakness of position",  and reflects sound public policy insofar as it promotes non-judicial settlement of disputes by ensuring that statements made during compromise negotiations remain private.  FED. R. EVID. 408 advisory committee's note.  Neither the text of the Rule nor the policies it serves are implicated in the case at bar.

Plaintiff communicated his settlement demand on December 11, 2009.  Dkt. No. 1, Ex. C. At that time, no "claim" existed.  See Compl. (filed in the State of New York Supreme Court on February 3, 2010).  Plaintiff had not initiated an action, nor had compromise negotiations between the parties begun.  Rather, Plaintiff's letter simply threatens legal action if Defendant fails to meet Plaintiff's demand.  Id.  Hence, the "other paper" at issue is not evidence "offered to prove . . .

amount *of a claim that was disputed*", nor an "offer[] or promis[e] to accept a valuable consideration in compromising or attempting to compromise *the claim*", nor a "statement[] made in compromise negotiations *regarding the claim*." FED. R. EVID. 408 (emphasis added). Moreover, the policies underlying Rule 408 do not favor exclusion of Plaintiff's demand. The amount at which Plaintiff values his claim is clearly relevant to the jurisdictional issue before the Court; the policy favoring non-judicial settlement of disputes is not promoted by excluding evidence of statements made before any claim arises. Thus, neither the text of Rule 408, nor the policies underlying it, provide a basis for excluding Plaintiff's pre-litigation demand from consideration in the jurisdictional analysis under 28 U.S.C. § 1446.

Additionally, Defendant has submitted an unfiled complaint, drafted and sent to Defendant on behalf of Plaintiff, which would venue in the Northern District of New York a threatened action based upon identical facts to that alleged in Plaintiff's state court Complaint; the draft complaint alleges damages in excess of $75,000 in no less than four points. Dkt. No. 1, Ex. D ¶¶ 5, 29, 38, 40(1). While not an operative pleading, this document is evidence, which, alongside the settlement demand, establishes "a reasonable probability that the claim is in excess of the statutory jurisdictional amount." Tongkook, 14 F.3d at 784; see Armstrong, 2007 WL 187693 at *1-2 (considering a prior version of plaintiff's complaint and a settlement demand of $70,000 as sufficient to establish the $75,000 amount in controversy requirement). Accordingly, Plaintiff's Motion to remand is denied.

## IV. MOTION TO DISMISS

### A. Standard of Review

Shortly after removing to federal court, Defendant filed a pre-answer Motion to dismiss for failure to state a claim for which relief may be granted. Dkt. No. 3. In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all [factual] allegations in the complaint as true and draw all inferences in the light most favorable to" the non-moving party. In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007). "Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007) (citations omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. Facial plausibility exists "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Additionally, the "tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

"The gravaman of an action alleging defamation is an injury to reputation. . . . [A] defamatory statement [is] one that exposes an individual 'to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce[s] an evil opinion of one in the minds of right-thinking persons, and . . . deprives one of . . . confidence and friendly intercourse in society.'" Celle v. Filipino Reporter Enters Inc., 209 F.3d 163, 178 (2d Cir. 2000) (quoting Kimmerle v. New York Evening Journal, 262 N.Y. 99, 101 (1933)); see also Golub, 89 N.Y.2d at 1076 (Generally, a written statement may be defamatory "if it tends to expose a

person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community") (quoting Mencher v. Chesley, 297 N.Y. 94, 100 (1947)).  Under New York law,[2] the requisite elements of a defamation claim are "a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se."  Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (1st Dep't 1999); Epifani v. Johnson, 882 N.Y.S.2d 234, 242 (2d Dep't 2009); DiBella v. Hopkins, 403 F.3d 102, 110 (2d. Cir. 2005).  Where a defendant disparages a plaintiff's professional stature and reputation, any finding of libel constitutes libel per se, and injury is assumed.  DiBella, 403 F.3d at 110; Liberman v. Gelstein, 80 N.Y.2d 429, 435 (1992).

In concluding whether a statement is libelous per se, a court must first determine whether the objectionable statement identified by a plaintiff could be plausibly construed as defamatory. Celle, 209 F.3d at 178.  The inquiry begins by determining "whether the words in question are susceptible of only one meaning or of several meanings.  Such a determination is to be made by the court."  Davis v. Ross, 754 F.2d 80, 82-83 (1985) (citing Julian v. American Business Consultants, 2 N.Y.2d 1, 17 (1956)); Geraci v. Probst, 15 N.Y.3d 336, 344 (2010) ("Whether particular statements are considered defamatory per se is a question of law") (citing Golub v. Enquirer/Star Group, 89 N.Y.2d 1074 (1997)).  In making that threshold decision, "the court must not isolate [the complained of words], but consider them in context, and give the language a natural reading rather

---

[2] Where jurisdiction is based on diversity, the Court applies the choice of law rules of the forum state.  See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Under New York's choice of law rules, the state of the plaintiff's domicile, here New York State, usually has the more significant interest, and its law generally applies.  Celle, 209 F.3d at 175.  Moreover, where, as here, "no party has challenged the choice of New York libel law, all are deemed to have consented to its application."  Id.

than strain to read it as mildly as possible at one extreme, or to find defamatory innuendo at the other." Weiner v. Doubleday & Co., Inc., 74 N.Y.2d 586, 592 (1989); see also Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 1997); James v. Gannett Co., 40 N.Y.2d 415, 419 (1976). If the court finds the words "reasonably susceptible of multiple meanings, some of which are not defamatory, 'it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood.'" Celle, 209 F.3d at 178 (quoting Davis, 754 F.2d at 83).

### B. Plaintiff's Defamation Claim

Plaintiff alleges that two separate letters authored by Defendant and sent to the Search Committee during Plaintiff's candidacy for Executive Director of NYSDA are defamatory. Plaintiff identifies a number of objectionable statements, each of which implicate Plaintiff's professional stature. Plaintiff's Complaint specifically alleges libel per se as its sole cause of action. Compl. ¶ 38. Therefore, to avoid dismissal at this juncture, Plaintiff's Complaint must sufficiently allege that the letters written by Defendant are defamatory on their face. See, e.g, Ava v. NYP Holdings, Inc., 64 A.D.3d 407, 412 (1st Dep't 2009) (the two discrete forms of libel are "libel per se, where the defamatory statement appears on the face of the communication, and libel per quod, where no defamatory statement is present on the face of the communication but a defamatory import arises through reference to facts extrinsic to the communication").

#### 1. April 14, 2009 Letter

Before turning to the individual statements that Plaintiff alleges to be defamatory, the Court notes the context in which those statements appear, namely a letter to the Search Committee regarding Plaintiff's candidacy for the Executive Director position. The context and content of the

April Letter would lead any ordinary reader to conclude that its author is expressing a strong opinion about Plaintiff's fitness for that position.

Plaintiff alleges that two statements contained in the April 14, 2009 letter to NYSDA Search Committee are libelous per se.[3]  Compl. ¶ 21.  The first reads, Plaintiff "was removed [from the position of the ADA Executive Director] approximately five months later, the day the new ADA president took office."  Id.; April Letter.  This statement is susceptible to only one meaning and, as a matter of law, is not defamatory on its face.  A statement that an individual has been "'remov[ed] from a job carries no imputation of dishonesty or lack of professional capacity.'"  Sch. of Visual Arts v. Kuprewicz, 3 Misc.3d 278, 284 (Sup. Ct. 2003) (quoting Nichols, 309 N.Y. at 601); Lian v. Sedgwick James of New York, Inc., 992 F. Supp. 644, 649 (S.D.N.Y. 1998) ("[a] mere statement of discharge or termination from employment, even if untrue, does not constitute libel").  "'It is only when the publication contains an insinuation that the dismissal was for some misconduct that it becomes defamatory.'"  Lian, 992 F. Supp. at 649 (quoting Nichols, 309 N.Y. at 601).  Here, the statement complained of is devoid of any imputation of dishonesty or lack of professional capacity; in fact, it places Plaintiff's removal within the context of a change in ADA administration, a situation that could have any number of innocent connotations.[4]  Furthermore, it is apparent from

---

[3] While Plaintiff identifies particular statements as defamatory, in analyzing Plaintiff's claims, the Court shall "consider the publication as a whole" and read it "against the background of its issuance with respect to the circumstances of its publication" James v. Gannett Co., 40 N.Y.2d 415, 419-20 (1976) (internal quotation marks and citations omitted); see also Immuno AG. v. Moor-Jankowski, 77 N.Y.2d 235, 253-54 (1991).

[4] Plaintiff contends that this statement, taken in conjunction with a statement pulled from the May Letter that Plaintiff was terminated as soon as the new president had the power to do so, has "a precise meaning which can only be understood as imputing to Plaintiff a severe failure to perform his duties such that he was involuntarily removed from the position under a cloud of misconduct."  Pl.'s Mem. of Law at 15-16.  The Court rejects this strained reading.  A plaintiff may not take statements out of context in an attempt to build a defamatory meaning behind them; nor shall a court

12

the letter that Plaintiff's term as President and acting Executive Director came to its natural conclusion. Thus, in context, Defendant does not assert that Plaintiff was ousted from his position, but only that the new ADA president was Plaintiff's successor, and the ADA declined to retain Plaintiff for another term.

Plaintiff alleges that a second statement in the April Letter reading "that Plaintiff 'was dismissed [by the ADA] after 5 months'" is defamatory. Compl. ¶ 21 (attribution to April Letter). As it appears in the April Letter, the statement actually reads, "What kind of relationship can there be if they dismissed him after 5 months?". See April Letter. For the same reasons discussed previously, this "mere statement of discharge or termination from employment, even if untrue, does not constitute libel." Lian, 922, F. Supp. at 649. Additionally, the content and interrogative form of the statement when accurately quoted bolsters the conclusion that it is not defamatory. Given the content and form of the statement, the Court finds inescapable the conclusion that the statement is merely an expression of Defendant's opinion and not an assertion of fact. As discussed below, this necessitates finding the statement non-libelous.

### 2. *May 2009 Letter*

As with the April Letter, the May Letter, read as a whole, is an expression of opinion against Plaintiff's candidacy for Executive Director of NYSDA. Plaintiff's Complaint alleges that the May Letter is libelous per se, and he identifies seven statements that allegedly make it so. Compl. ¶ 32 (a-g). Several of these statements require judicial inquiry to determine their character as fact or

---

strain to find defamatory innuendo. Weiner, 74 N.Y.2d at 592. Moreover, Plaintiff misstates what the May Letter actually says, namely, that Plaintiff was relieved of his position the first day the new ADA president was sworn in. Dkt. 1-2 ¶ 1. Accurately recounted, the statement holds a different connotation than one asserting that Plaintiff was terminated as soon as the new president had the power to take such action.

opinion. The characterization of an allegedly defamatory statement as fact or opinion is a matter of law for the court, Celle, 209 F.3d at 178, and is critical, as "expressions of opinion, in contrast to assertions of fact, are privileged and, however offensive, may not be the subject of an action for defamation." Weiner, 74 N.Y.2d at 593 (citing Steinhilber v. Alphonse, 68 N.Y.2d 283, 286 (1986)); see DiBella v. Hopkins, 187 F. Supp. 2d 192, 199 (S.D.N.Y. 2002) ("Statements of subjective opinion are not actionable under New York law") (citation omitted); see also Flamm v. Am. Ass'n of Univ. Women, 201 F.3d 144, 147–48 (2d Cir. 2000) (noting New York's Constitution provides for greater protection of opinions than the Federal Constitution); Immuno AG. v. Moor-Jankowski, 77 N.Y.2d 235, 248-52 (1991). Additionally, "loose, figurative or hyperbolic statements, even if deprecating the plaintiff, are not actionable." Dillon, 704 N.Y.S.2d at 5 (citing Gross v. New York Times, 82 N.Y.2d 146, 153 (1993)).

In making a determination as to the fact or opinion nature of a statement, "'[t]he essential task is to decide whether the words complained of, considered in the context of the entire communication and of the circumstances in which they were spoken or written, may be reasonably understood as implying the assertion of undisclosed facts justifying the opinion.'" Celle, 209 F.3d. at 178 (quoting Steinhilber, 68 N.Y.2d at 290). "If the statement reasonably would be understood as implying undisclosed facts then it is not protected opinion under New York's constitution." Id. When the defendant's statements, read in context, are readily understood as conjecture, hypothesis or speculation, this signals to the reader that what was said was opinion, not fact. Levine v. McPhee, 119 F.3d 189, 196 (2d Cir. 1997). Four factors are particularly relevant in differentiating statements of mere opinion from those asserting or implying facts. See Celle, 209 F.3d. at 178 (citing Immuno AG., 77 N.Y.2d at 252). These are:

14

1) "an assessment of whether the specific language in issue has a precise meaning which is readily understood or whether it is indefinite and ambiguous";
2) "a determination of whether the statement is capable of being objectively characterized as true or false";
3) "an examination of the full context of the communication in which the statement appears"; and
4) "a consideration of the broader social context or setting surrounding the communication including the existence of any applicable customs or conventions which might signal to readers or listeners that what is being read or heard is likely to be opinion, not fact."

Id. (quoting Steinhilber, 68 N.Y.2d at 292); see also DiBella, 187 F. Supp. 2d at 199-200.

In the present case, when Defendant's statements are read in context, it is clear they are statements of opinion only and not factual assertions. The first statement Plaintiff faults is the assertion that Plaintiff "lied to [NYSDA Executive Committee, Officer and Governors] and everyone else at NYSDA." Compl. ¶ 32a. The statement that Plaintiff lied is immediately followed by the sentence "[Plaintiff] took the job knowing it was temporary after his mentor resigned but with the full intention of keeping that position and having Roy Lasky run NYSDA with him behind the scenes." May Letter. Defendant's assertion that Plaintiff "lied" clearly rests solely on his own speculation into Plaintiff's motives in taking the position. This is statement is hyperbolic and neither precise, nor objectively verifiable. See Shor Int'l Corp. v. Eisinger Enters., Inc., No. 90 Civ. 2353, 2000 WL 1793389, at *3 (S.D.N.Y. Dec. 5, 2000). Moreover, read in context, the words are readily understood by an ordinary reader as expressing speculation and opinion and not implying undisclosed facts. Levine, 119 F.3d at 196. Therefore, the statement is not libelous.

Plaintiff alleges that the statement from the May Letter that Plaintiff "was relieved of his executive director position [of the ADA]," because "they just wanted Mark Feldman out of the ADA building," is defamatory. Compl. ¶32(b). It is not. The paragraph in which that statement appears begins, "[a]t the end of his term as president and acting executive director of the ADA, the

15

first day the new ADA president was sworn in, Mark Feldman was relieved of his executive director position. It was not that the new president of the ADA wanted that second job, but they just wanted Mark Feldman out of the ADA building." Viewed in context, the statement identified by Plaintiff is similar to the allegation contained in the first letter that "plaintiff was removed approximately five months later, the day the new ADA president took office." The rule that even an untrue statement of termination that does not insinuate that the termination occurred due to dishonesty or lack of capacity is not libelous even if untrue, applies equally to this latter statement. Lian, 992 F. Supp at 649. Moreover, unlike the one from the April Letter, this statement incorporates additional speculation regarding the motives of third parties. When read in the relevant context of a contested hiring process, the statements "are readily understood as conjecture, hypothesis or speculation, [which] signals to the reader that what was said was opinion, not fact." Levine, 119 F.3d at 196.

Defendant's statement in the May Letter that "[w]e need someone who the members and leadership can call and know the executive director is honest and not concerned with past politics" is also a non-actionable statement of opinion. This statement is not a specific assertion with a precise meaning; cannot be objectively characterized as true or false; and, when viewed in context, can only be reasonably construed as a statement of opinion. Accordingly, it lends no support to Plaintiff's defamation claim.

The following allegedly defamatory statements similarly fail to raise an actionable claim: Plaintiff is an executive director with a "three day in house and two day shopping, playing golf and spend[ing] time with his family" schedule; and Plaintiff "has neither experience in association management nor employee relations. His curriculum vitae consist[s] of part time executive director of the ADA for 6 months and then subsequently relieved of that position. Now he works 2 days a

week for the last 5 months in Albany." Compl. ¶ 32d-e. Neither statement is defamatory, as neither has a tendency expose Plaintiff "to public hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, or . . . induce an evil opinion of [Plaintiff] in the minds of right-thinking persons, [nor] . . . deprive[ him] of . . . confidence and friendly intercourse in society." Kimmerle, 262 N.Y. 101. In fact, these statements "did not impugn, or even relate to, any particular talent or ability needed to perform in [Plaintiff's] profession. Golub, 89 N.Y.2d at 1076. They are not, therefore, reasonably susceptible to defamatory meaning. Id. ("To be actionable as words that tend to injure another in his or her profession, the challenged statement must be more than a general reflection upon [plaintiff's] character or qualities. Rather, the statement must reflect on her performance or be incompatible with the proper conduct of her business."). Additionally, the statements are hyperbole. A statement "becomes a hyperbolic 'type of speech' only by reference to the circumstances or context in which it is used." 600 West 115th Street Corp. v. Von Gutfeld, 80 N.Y.2d 130, 140 (1992). Taken out of context, the statements describing the Plaintiff's lack of "experience in management []or employee relations" and referencing his curriculum vitae can be interpreted as facts; however, the surrounding statements that "[g]uarantee[], the other candidates . . . have more experience" and "[g]uarantee[] the other candidates have no connections to [Lasky]" emphasize that the statements as a whole are hyperbolic in nature and indicative of opinions. Dkt. No. 1-2, May 2009 Letter.

Another statement in Defendant's May Letter that Plaintiff characterizes as libelous reads, Plaintiff's "staff [at NYSDA] staff has no supervision or direction." Compl. ¶ 32(c). In the paragraph in which the statement appears, Defendant notes his concern over Plaintiff's splitting his time between Albany and Long Island, and he argues for having a full-time, zealous NYSDA

17

advocate in the Albany area.  May Letter.  He explains that "[m]any of our New York State components have full time executive directors in the office," and questions how "such a large and important organization as NYSDA can not have a person in our office full time."  Id.  Moreover, Defendant poses the question "[w]hat kind of employer or executive committee designs the job to fit the candidate?"  Id.  These statements insinuate distaste for NYSDA's structuring of the position to allow for part-time accommodations.  Although Defendant hyperbolically asserts Plaintiff spends his time golfing and shopping to convey this frustration, the fact remains that Defendant is asserting Plaintiff's absences result from NYSDA's accommodations, rather than Plaintiff's proclivity to be an absentee employee.  Thus, Defendant does not attribute the lack of staff supervision to Plaintiff, but to the job structure established by NYSDA.  This statement cannot reasonably be construed as defamatory.

       Finally, Plaintiff argues that the statement "[t]here are many skeletons in those NYSDA closets and Mark Feldman has ties to all of them" is defamatory.  Compl. ¶ 32(g).  It too, however, is hyperbolic, nonspecific, and not objectively verifiable, and hence, not actionable.  The Court reaches this conclusion aware that a complaint, in a different context, that alleged as defamatory a statement with similar phrasing survived a motion to dismiss.  See DiBella v. Hopkins, 187 F. Supp. 2d 192, 196 (S.D.N.Y. 2002) ("Let the closet doors open and the skeletons will come out.").  However, in DiBella, that statement, quoted in an interview with newspaper reporter, was made in conjunction with numerous "precise and readily understood" allegations that the plaintiff had taken bribes; it was those statements that the court noted "could be proven false."  Id. at 200.  That situation finds no corollary in the case at bar, where there are no such specific factual assertions and

where the context is wholly different. Accordingly, the Court finds that, as a matter of law, neither this statement, nor the May Letter as a whole, is defamatory.

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Plaintiff's Motion to remand this action to state court (Dkt. No. 4) is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion to dismiss (Dkt. No. 3) is **GRANTED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED: March 31, 2011
        Albany, New York

Lawrence E. Kahn
U.S. District Judge